# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47277-5-II |
| Respondent, | |
| v. | |
| CHASE BRENDON McCRACKEN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Chase Brendon McCracken was convicted, after a bench trial on stipulated facts, of malicious mischief and residential burglary, both with sexual motivation. On appeal, McCracken argues that (1) there was insufficient evidence to support (a) the element of malice in his malicious mischief conviction and (b) that he acted with sexual motivation when he committed residential burglary; (2) the State erred in believing it could not withdraw the sexual motivation allegations; and (3) the legal financial obligations (LFOs) imposed at his sentencing should be stricken because he lacks the ability to pay. We affirm.

## FACTS

In early November 2013, McCracken entered a woman's house, without her knowledge or permission, through the "doggie door." Clerk's Papers (CP) at 23. McCracken entered the house

because he was cold and hungry. McCracken had heard that the woman was frequently out of town and chose to enter her house hoping she would not be there.

Inside, McCracken ate some candy, drank some juice, used the bathroom, undressed, and got into the bed in the master bedroom. While he was in bed, he masturbated. McCracken left before the woman returned home.

When the woman returned home, she discovered stains on her bedding, she contacted the authorities, who took a sample from stain on the bedding. Testing by the Washington State Patrol Crime lab showed that the stains were semen with a DNA (deoxyribonucleic acid) profile that matched McCracken.

McCracken was charged with one count of residential burglary and one count of third degree malicious mischief. He attempted to plead guilty at his first appearance, but he was not allowed to do so. Before his arraignment, the State filed an amended information that added a special allegation of sexual motivation to both charges.

McCracken moved to dismiss the sexual motivation allegations. The State opposed the motion, arguing that the State was not allowed to dismiss the sexual motivation allegations without the superior court making specific findings. The State also argued that while there may have been other reasons for McCracken's entry and remainder in the home, one of his purposes for remaining in the home was to "gratify himself sexually" through masturbation. Transcript (Tr.) (Feb. 27, 2104) at 9. The superior court denied McCracken's motion to dismiss the sexual motivation allegations.

The case proceeded to a bench trial on stipulated facts. The stipulated facts included a written statement by McCracken to the court and the police reports setting out the above facts.

Also included was a report of a psychologist and certified sex offender treatment provider who determined that McCracken's behavior was not consistent with a crime that was sexually motivated and McCracken did not meet the description of someone who should register as a sex offender.

The trial court found McCracken guilty of both counts with sexual motivation for each. With respect to the malicious mischief with sexual motivation conviction, the trial court found McCracken "masturbated with the affect [sic] of ejaculation and that was a willful disregard of the rights of another, privacy rights among other things. Definitely would be vexing and annoying and injurious. He knowingly and willfully did it and it was wrongfully done without lawful excuse." Tr. (Aug. 27, 2014) at 29. The trial court further found, with respect to the residential burglary with sexual motivation conviction, that McCracken "was damaging sheets while committing the residential burglary," and he was sexually motivated when he damaged the sheets. Tr. (Aug. 27, 2014) at 31.

McCracken was sentenced to an exceptional sentence below the standard range. The sentencing court also imposed the following LFOs on McCracken: $500 Victim Assessment fee, a $200 Criminal Filing Fee, and a $100 DNA Collection Fee.

McCracken appeals.

## ANALYSIS

A.   SUFFICIENCY OF THE EVIDENCE

McCracken argues that there was insufficient evidence to support the element of malice in his conviction for malicious mischief. He also argues that there was insufficient evidence that he acted with sexual motivation when he committed the residential burglary. We hold that there is

sufficient evidence to support the malice element in McCracken's conviction for malicious mischief, and that there is sufficient evidence to support a finding of sexual motivation on McCracken's residential burglary conviction.

a.      Legal Principles

To determine whether sufficient evidence supports an adjudication, we view the evidence, along with all reasonable inferences that may be drawn from the evidence, in the light most favorable to the State and determine whether any rational fact finder could have found the crime's elements beyond a reasonable doubt. *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010). Following a bench trial, our review is limited to determining whether substantial evidence supports the challenged findings and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). Unchallenged findings of fact are verities on appeal, and a trial court's conclusions of law are reviewed de novo. *Id.*; *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

b.      Malice—Malicious Mischief

RCW 9A.48.090 codifies Washington's proscription of third degree malicious mischief. In pertinent part, the statute states, "A person is guilty of malicious mischief in the third degree if he or she . . . [k]nowingly and maliciously causes physical damage to the property of another, under circumstances not amounting to malicious mischief in the first or second degree." RCW 9A.48.090(1)(a). "Malice" and "maliciously" are defined as "an evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). The definition also includes a permissive inference that says, "Malice may be inferred from an act done in willful disregard of

the rights of another, or an act wrongfully done without just cause or excuse." RCW 9A.04.110(12).

McCracken argues the trial court erred by relying on the permissive inference as a mandatory presumption. But, the record shows that sufficient evidence supports the trial court's finding that McCracken's actions met the definition for malice without relying on any inference.

The trial court found that McCracken's staining the woman's sheets was "vexing and annoying and injurious." Tr. (Aug. 27, 2014) at 29. The definition of malice includes actions done with "evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). We hold that, when viewed in the light most favorable to the State along with the reasonable inferences that follow, the evidence that McCracken entered the woman's home without permission, ate her food, drank her juice, used her bathroom, and then masturbated and ejaculated on her bed is sufficient to support the trial court's finding that these actions were done with an evil intent, wish, or design to vex, annoy or injure. Surely, even if there was no evil intent, the act of entering someone's home without permission, eating and drinking her property, using her bathroom, and then soiling her bedding could be reasonably construed as a design to vex, annoy or injure. Therefore, the record supports the trial court's finding that the element of malice had been proven.

However, even if the trial court improperly relied on an inference and treated the permissive inference as a mandatory presumption, we hold that an inference of malice was appropriate. "A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *State v. Ratliff*, 46 Wn. App. 325, 330, 730 P.2d 716 (1986), *review denied*, 108 Wn.2d 1002 (1987). "A

permissive inference is valid when there is a 'rational connection' between the proven fact and the inferred fact, and the inferred fact flows 'more likely than not' from the proven fact." *Id.* at 330-31 (quoting *County Court of Ulster County v. Allen*, 442 U.S. 140, 165, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979).

In *Ratliff*, Division One considered "whether the trial court erred in instructing the jury that it could infer malice 'from an act done in willful disregard of the rights of another.'" 46 Wn. App. at 329-30 (quoting jury instructions). There, police officers left Ratliff in the back of a police van for approximately 15 minutes unattended and when they returned, they found Ratliff had broken the window between the holding area and the cab of the van. *Id.* at 326. They saw that the radio was damaged and an officer's jacket was pulled through the window. *Id.* at 326. Ratliff was convicted of second degree malicious mischief. *Id.* at 327.

The court explained that the jury instruction was proper because there was a "rational connection" between the proven facts of that case and an inference of malice:

> Ratliff admitted on cross examination that he continued to pull radio wires loose after he did not succeed in bringing the radio towards him. He stated that he continued to pull at the wires because he "was frustrated." Furthermore, the officers testified that one of their jackets had been pulled through the window into the prisoner holding area, a situation more consistent with malicious intent than with Ratliff's claims that he wanted to use the radio to call help.

*Id.* at 330-31. In conclusion, the court held that "the inference of malice flows more likely than not from the conduct of the defendant." *Id*. at 331.

Here, the same conclusion is appropriate. The evidence shows that McCracken entered the house without permission when the woman was not there because he was cold and hungry. McCracken then proceeded to eat candy and drink juice belonging to the woman without her

permission. Finally, after using her bathroom, he crawled into the woman's bed, and then masturbated and ejaculated on the woman's bedding. Based on this evidence, an inference of malice flows more likely than not from McCracken's actions.

Sufficient evidence supports the trial court's finding of malice. McCracken's challenge fails.

c.  Sexual Motivation—Residential Burglary

McCracken next argues there was insufficient evidence to prove he committed the residential burglary with sexual motivation because the State could not prove beyond a reasonable doubt that he committed the crime of residential burglary for the purpose of sexual gratification. We disagree.

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). "'Sexual motivation' means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." RCW 9.94A.030(47). "[T]he State must prove beyond a reasonable doubt that the defendant committed the crime for the purposes of sexual gratification," and "[i]t must do so with evidence of identifiable conduct by the defendant while committing the offense." *State v. Vars*, 157 Wn. App. 482, 494, 237 P.3d 378 (2010).[1]

---

[1] In analyzing the former juvenile counterpart to RCW 9.94A.030(47), our Supreme Court agreed that "'the statute makes sexual motivation *manifested by the defendant's conduct* in the *course of committing a felony* an aggravating factor in sentencing.'" *State v. Halstien*, 122 Wn.2d 109, 120, 857 P.2d 270 (1993) (quoting *State v. Halstien*, 65 Wn. App. 845, 853, 829 P.2d 1145 (1992)).

As McCracken acknowledges, "There is . . . sufficient evidence of burglary because the stipulated facts show that [he] entered and remained unlawfully with intent to commit theft of food and drink." Br. of Appellant at 13. But there is also evidence that McCracken *remained* unlawfully in the woman's dwelling to masturbate in her bed. And the stipulated fact that McCracken masturbated and ejaculated in the woman's bed while remaining unlawfully in her house is "evidence of identifiable conduct . . . while committing the offense." *Vars*, 157 Wn. App. at 494. The trial court found sexual motivation based on McCracken "damaging sheets while committing the residential burglary" and being sexually motivated when he damaged the sheets. Tr. (Aug. 27, 2014) at 31. Thus, the stipulated facts support the trial court's finding that one purpose McCracken remained unlawfully in the house was for his sexual gratification. Therefore, there is substantial evidence to allow a rational fact finder to find that McCracken committed residential burglary with sexual motivation beyond a reasonable doubt. *See Drum*, 168 Wn.2d at 34-35. McCracken's challenge fails.

B.      STATE'S AUTHORITY TO WITHDRAW SEXUAL MOTIVATION ALLEGATIONS

McCracken argues that because the prosecutor erroneously believed that the State could not withdraw the sexual motivation allegations, we should remand the case for further proceedings so that the prosecution has an opportunity to withdraw the sexual motivation allegations. We disagree.

The charging statute on the sexual motivation allegation is as follows:

(1) The prosecuting attorney shall file a special allegation of sexual motivation in every criminal case, felony, gross misdemeanor, or misdemeanor, other than sex offenses as defined in RCW 9.94A.030 when sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense

that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact finder.

(2) In a criminal case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the accused committed the crime with a sexual motivation. The court shall make a finding of fact of whether or not a sexual motivation was present at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether or not the defendant committed the crime with a sexual motivation. This finding shall not be applied to sex offenses as defined in RCW 9.94A.030.

(3) The prosecuting attorney shall not withdraw the special allegation of sexual motivation without approval of the court through an order of dismissal of the special allegation. The court shall not dismiss this special allegation unless it finds that such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful.

RCW 9.94A.835.

Our Supreme Court held in *State v. Rice*, 174 Wn.2d 884, 897, 279 P.3d 849 (2012), that the legislature, despite its use of the word "shall," intended the charging of a sexual motivation aggravator to be a discretionary function of the prosecutor. The Court explained that a prosecutor's decision to charge a special allegation, when one is available, depends on "the facts and circumstances of each case and the prosecutor's own policies and priorities," and is, therefore, necessarily a discretionary function of his office. *Id.* at 902.

Here, even if the prosecutor mistakenly believed that the State had no authority to withdraw the sexual motivation allegations, there is no evidence that the State would have otherwise withdrawn the allegations. Instead, the record shows that the State amended the information to add the sexual motivation allegations and then opposed the motion to dismiss the sexual motivation allegations. The State argued that McCracken committed the residential burglary when he unlawfully remained in the house to "gratify himself sexually" through masturbation. Tr. (Feb.

9

27, 2104) at 9.  Thus, regardless of the understanding of the State's authority to do so, the record fails to support the argument or inference that the prosecutor intended to withdraw the sexual motivation allegations.  Therefore, we decline McCracken's request to remand this case to give the prosecutor a second chance to remove the sexual motivation allegations.

C.      LEGAL FINANCIAL OBLIGATIONS

McCracken argues that his LFOs should be stricken because he lacks the ability to pay. We decline to review the issue because McCracken raises it for the first time on appeal, and even if we were to grant review, only mandatory LFOs were imposed, and the sentencing court is not required to make an ability-to-pay inquiry before imposing mandatory LFOs.  *See* RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015) (holding that a defendant who fails to object to the imposition of LFOs at sentencing is not automatically entitled to review.); *State v. Duncan*, No. 90188-1, 2016 WL 1696698 (Wash. April 28, 2016), at *2-3 (affirming the appellate court's decision to decline review of the imposition of LFOs that were not objected to at the sentencing court); *see also State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (holding that the legislature expressly directed that an ability to pay analysis not be considered when imposing victim restitution, victim assessment fees, DNA fees, and criminal filing fees); *State v. Mathers*, No. 47523-5-II, 2016 WL 2865576 (Wash. Ct. App. May 10, 2016) *4 (holding that sentencing courts do not need to conduct an ability to pay analysis before imposing victim assessment fees or DNA fees).

In summary, we hold that (1) sufficient evidence supports the trial court's finding of malice and sexual motivation; (2) regardless of any understanding regarding the State's authority, there is no evidence the State intended to withdraw the sexual motivation allegations; and (3) McCracken's

No. 47277-5-II

argument against the imposition of LFOs is without merit. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson F.J.

_____
Sutton, J.